**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE

SHANNON KAYE DENNY                                     CASE NO. 15-51918

DEBTOR

**OPINION AND ORDER FINDING RICHARD G. KENNISTON
IN CONTEMPT AND IMPOSING SANCTIONS**

This matter is before the Court on a Motion to Compel Attorney Richard Kenniston to

Turn Over Funds, or, in the Alternative, Motion for Sanctions; and Motion to Shorten Notice

filed by the Chapter 13 Trustee (the "Sanctions Motion").  [ECF No. 84.]  A hearing was held on

January 18, 2018, and the request for turnover of funds by the Chapter 13 Trustee ("Trustee")

was granted by an Order entered January 19, 2018.  [ECF No. 90.]  The request for sanctions was

continued to allow the Trustee time to conduct discovery and give Kenniston additional time to

respond.  [*Id.*]

The continued hearing on the Sanctions Motion was held on February 22, 2018.  The

Court also considered a Motion for Continuance filed by Kenniston the night before the hearing.

[ECF Nos. 95-97, 100, 108-09.]  Despite initial reservations, Kenniston's Motion for

Continuance was granted by the Sanctions Order and Order Setting Evidentiary Hearing on

March 2, 2018, to allow him to obtain an attorney and mount a defense.  [ECF No. 124 (the

"March 2 Order").]  The March 2 Order also set the final evidentiary hearing on the Sanctions

Motion for April 10, 2018.

The April 10 hearing was held, although Kenniston did not appear, and this matter is ripe

for decision.  Kenniston is in contempt of court orders and has failed to perform his obligations

to his client and this Court.  Therefore, sanctions are warranted.

## I.    FACTS AND PROCEDURAL HISTORY.

Richard Kenniston filed the Debtor's chapter 13 petition on September 29, 2015.  [ECF

No. 1.]  Kenniston was replaced as counsel for the Debtor by Tammy E. Howard earlier this

year.  [ECF Nos. 103 and 124.]  The Debtor's plan was confirmed on January 6, 2016.  [ECF No.

76.]

Kenniston has a small business checking account at Citizens Guaranty Bank in the name

of "Richard G Kenniston (DBA) Law Offic [sic] of Richard Kenniston," with an account number

ending in 590 (the "Business Account").  [ECF 136, Exhs. 3-4, 7.]  Kenniston also has a savings

account at Park Community Credit Union in the name of "Richard G. Kenniston," with an

account number ending in 4251 (the "Savings Account").  [ECF No. 136, Exhs. 1-2.]  Kenniston

acknowledged these accounts are for business and personal use, respectively, at the February 22

hearing.  He also admitted he did not have an escrow account as required by the Kentucky Rules

of Professional Conduct.

Kenniston made a deposit of $4,486.52 in his Business Account on October 31, 2017 (the

"October 31 Deposit").  [ECF No. 136, Exh. 3.]  The October 31 Deposit included the personal

check of the Debtor[1] dated October 30, 2018, in the amount of $3,425.52 (the "Payoff Funds").

[ECF No. 100, Exh. 2; ECF No. 136, Exh. 3.]  The check for the Payoff Funds was made payable

---

[1] The Debtor's name when the case was filed is in the caption of the case.  The Debtor has since married, so her
bank account is in her new name, Shannon Kaye Griffin.

to, and endorsed by, "Richard Kenniston" and the memo line of the check indicated it was for

"Chapter 13 Payoff".  [ECF No. 100, Exh. 2.]

The October 31 Deposit also included a check in the amount of $250.00 that the Debtor's

husband delivered to Kenniston for handling the chapter 13 plan payoff (the "Payoff Fee").

[ECF Nos. 100, Exh. 2 and ECF 136, Exh. 3.]  Kenniston did not file a fee disclosure or an

application for approval of those fees, so he was ordered to turn over the Payoff Fee to the

Trustee in the March 2 Order.

The next day, November 1, 2017, Kenniston wrote a check to "Cash" on his Business

Account for $3,000.00.  [ECF No. 136, Exh. 4.]  The Business Account had a balance of

$1,331.26 after the check was cashed and other debits and credits were considered.  [*Id.*]

Kenniston deposited $2,700.00 of the cash withdrawal in his Savings Account on the same day,

November 1, 2017, and withdrew the same amount on November 2, 2017.  [ECF No. 136, Exhs.

1 and 2.]  The Savings Account held $13.29 before the deposit and after the withdrawal.

The Trustee determined that Kenniston did not deliver the Payoff Funds in early 2018.

Therefore, she filed the Sanctions Motion on January 11, 2018, seeking turnover of the Payoff

Funds and an accounting of Kenniston's receipt and disposition of the funds.  [ECF No. 84.]  The

Sanctions Motion also sought additional disclosure, including information on legal fees received.

[*Id.*]  The Trustee supplemented the Sanctions Motion with an Affidavit in support.  [ECF No.

87.]

A hearing on the Sanctions Motion was held on January 18, 2018.  [ECF No. 89.]

Kenniston did not contact the Trustee, respond in the record or appear at the hearing.  Based on

the record and the information provided at the hearing, Kenniston was ordered to immediately

turnover the Payoff Funds to the Trustee (the "Turnover Order").  [ECF No. 90.]  Kenniston was

further ordered, on or before January 30, 2018, to: (1) file an affidavit of compliance; (2) file an accounting of his receipt and disposition of the Payoff Funds; (3) produce all records related to the Payoff Funds; and (4) disclose any and all compensation received from the Debtor since the petition date. [*Id.*]

The Turnover Order set the Sanctions Motion for a final hearing on February 22, 2018. The Trustee was instructed to supplement the record and Kenniston was given the opportunity to file a written response at least three days before the hearing. [*Id.*] Kenniston filed an Affidavit of Compliance that showed he waited until February 2, 2018, to send the Payoff Funds to the Trustee, almost two weeks after the Turnover Order was entered. [ECF No. 95.] On February 7, 2018, the Trustee filed a status report indicating that she had received the Payoff Funds on February 5, 2018, but she had not received any records from Kenniston as required by the Turnover Order. [ECF No. 96.]

The Trustee supplemented the record with additional briefing in support of her request for sanctions on February 8 and 11, 2018. [ECF Nos. 97 and 100.] The supplements indicate Kenniston traveled outside the country almost immediately after depositing and withdrawing the Payoff Funds and he filed a new joint bankruptcy petition with his wife in late November 2017. [ECF No. 97, at 2-3.][2]

Kenniston waited until the afternoon before the February 22 hearing to file his Response, ignoring the obligation to file it at least three days before the hearing. [ECF No. 108.] He also

---

[2] Kenniston and his wife filed a chapter 13 petition on January 31, 2017, but the case was dismissed without confirmation of a plan on September 21, 2017, for failure to make plan payments. *In re Richard and Felicite Kenniston*, Case No. 17-50156. Kenniston and his wife filed a second chapter 13 petition on November 21, 2017. *In re Richard and Felicite Kenniston*, Case No. 17-52283. The case was converted to chapter 7 on February 5, 2018, and was dismissed on February 22, 2018, for failure to pay any filing fee installment payments.

did not file his Motion for Continuance until 9:31 p.m. the night before the hearing.  [ECF No.
109.]

The hearing on February 22, 2018, was attended by Kenniston, the Trustee, the United
States Trustee, and Howard.  In his Response and at the February 22 hearing, Kenniston admitted
he deposited the Payoff Funds in his Business Account because he does not have an escrow
account for client funds.  [ECF No. 108; ECF No. 128 at 5:15-18.]  Kenniston also
acknowledged that his Savings Account is used for personal expenses.  [ECF No. 128 at 5:1-11.]

Kenniston's only dispute with the Trustee's characterization of events is that he did not
use the funds for his vacation because the trip was planned since early 2017 and his mother paid
for the trip.  [ECF No. 108.]  Kenniston instead blamed his problems on the "disarray" caused by
the vacation and the need to relocate after his lease was not renewed.  [*Id.*]  The Response
indicates that, after he returned from his vacation, "the Denny matter was lost in the shuffle …"
[*Id.*]

Kenniston admitted he compounded his problems when he did not act after the Sanctions
Motion was filed.  [ECF No. 108.]  His only explanation for this delay was "paralysis and
embarrassment over the situation" and the overextension of his practice.  [*Id.*]  The March 2
Order continued the final hearing to April 10 so Kenniston could obtain replacement counsel and
mount a defense.  [ECF No. 128, 12:3-14.]

The record does not contain a notice of appearance of an attorney for Kenniston, even
though that was a basis for the continuance.  Kenniston was not present when the April 10
hearing began at 9:00 a.m.  The United States Trustee had asked for limited expedited relief in
other cases involving Kenniston, so those matters were heard first in an attempt to give
Kenniston additional time to appear.  Kenniston ultimately did not attend the hearing, which

ended shortly after 9:30 a.m., or file any other information in the record after the February 22

hearing.

## II.    DISCUSSION.

### A.    The Trustee's Exhibits Are Admitted.

The Trustee filed the Trustee's Witness and Exhibit List, attaching seven exhibits.  [ECF

No. 136.]  The Trustee withdrew Exhibits 5 and 6 [ECF No. 140] and only sought admission of

Exhibits 1-4 and 7.  No party objected to admission of the Trustee's exhibits, which are

admissible as certified business records and part of the record in this case.  Therefore, the

exhibits are admitted.

### B.    Kenniston Used the Payoff Funds for His Own Purposes.

The record in this case confirms by clear and convincing evidence that Kenniston

intentionally misappropriated the Payoff Funds for his own use without just cause and against his

client's instructions.  The Payoff Funds were delivered via check at a meeting with the Debtor,

her spouse, and Kenniston on October 30, 2017.  The check indicates it is for "Chapter 13

Payoff" and Kenniston admitted he knew the funds were intended to pay off the Debtor's chapter

13 plan.  [ECF No. 108.]

Despite his obligation to deliver the Payoff Funds to the Trustee, Kenniston admitted the

Payoff Funds were used for his own business and living expenses.  [ECF No. 128 at 5:1-11.]

This alone is sufficient to find Kenniston in contempt.

Further, the evidence supporting this conclusion is overwhelming even without

Kenniston's blunt admission.  Kenniston's written response says he "never saw Ms. Griffin

attempting to pay off her Ch. 13 as a money making venture."  [ECF No. 108.]  The timing of the

activity in Kenniston's bank accounts prove the fallacy of this statement.

Kenniston deposited the Payoff Funds into his Business Account on October 31, 2017, creating a balance of $4,613.95.  [ECF No. 136, Exh. 3.]  The very next day, Kenniston wrote a check to Cash for $3,000.00.  Also on November 1, Kenniston deposited $2,700.00 in his Savings Account.  Kenniston's acknowledgment that his practice was overextended [ECF No. 108] and the lack of any contrary evidence makes it reasonable to conclude the funds in the Savings Account deposit were part of the $3,000.00 withdrawal from the Business Account.  Kenniston also admitted that the Payoff Funds went to the Savings Account.  [ECF No. 128 at 4:18-25.]  Kenniston then admitted the Savings Account is used for personal expenses, so there was no reason client funds should ever have gone in this account.  [*Id.* at 6:18-19.]

Regardless, Kenniston withdrew the $2,700.00 deposit from the Savings Account the next day, leaving less than $14.00 in the account, on November 2, 2017.  Also, his Business Account was left with only $1,331.26 after the November 1 withdrawal (after other debits and credits were taken).  The Business Account never exceeded this amount in November, except for three days later in the month after Kenniston had tendered a large check for deposit.

The deposit ticket for the large check has the notation, "*put hold on check," and the entry was reversed a few days later.  Therefore, it is fair to infer Kenniston never had access to the funds.  Even if Kenniston had access to these funds and made the payoff at that time, the conclusion that Kenniston misappropriated his client's funds would not change.  A lawyer cannot use a client's funds for his own purposes and against the client's instructions even for a few days, hours or minutes.

The rapid depletion of the bank accounts to amounts below the payoff amount prove Kenniston could never have reasonably believed he would deliver the Payoff Funds to the Trustee.  Also, the extremely short time frame between receipt and withdrawal of the Payoff

Funds indicates a deliberate, but ineffective, attempt to confuse his financial records.
Kenniston's admission that his "practice became overextended some months ago" confirms he
needed funds in his business and personal life.  [ECF No. 108.]

Kenniston attempts to discredit the Trustee's suggestion that he took the Payoff Funds
because he went on a vacation immediately after the funds were withdrawn from his accounts.
Kenniston admitted he left for a cruise on November 3, 2017, but suggested he did not need the
Debtor's funds because his mother paid for the trip.  Kenniston also provided copies of emails
from his mother that confirm planning for the trip began the prior February.

This argument does nothing to absolve Kenniston of his wrongdoing.  It is easy to believe
Kenniston still needed some money for incidental expenses on his trip, even if his mother paid
for the cruise.  Further, it is more likely he would take the funds when the cruise was imminent,
so the length of time to plan the vacation has little impact.  Ultimately, it does not matter whether
Kenniston used the Payoff Funds for his vacation or to pay other business or personal expenses.
Kenniston still took money that belonged to the Debtor and did not pay off her bankruptcy case.

Kenniston then argued that he thought he cut a check from "his account," so he believed
the matter was dealt with when he returned from the vacation.  This excuse lacks any credibility
after a review of the facts.  The bank records show there was never enough money in the
Business Account to support a check in the amount of the Payoff Funds after Kenniston
withdrew $3,000.00 the day after the October 31 Deposit.  Kenniston would have written a cold
check, which is a criminal offense in Kentucky.

Also, the majority of the Payoff Funds ended up in his Savings Account.  Not only was
there never enough money in the Savings Account to make the payoff, checks are not written on
bank savings accounts.  This is confirmed by Kenniston's admission that he had to obtain a

8

certified check when he finally delivered the Payoff Funds to the Trustee from funds in the

Savings Account.  [ECF No. 95; ECF No. 128 at 4:15-21.]  Therefore, Kenniston's allegation

that he thought he wrote a check is not remotely believable.

A lawyer that takes money from a client at least violates his fiduciary duties and the

Kentucky Rules of Professional Conduct.  *See infra*.  The actions are particularly egregious in

this case because the Debtor was in the midst of her own financial difficulties (as evidenced by

her need to file bankruptcy).  Although the violation is the same, a lawyer that takes advantage of

a financially vulnerable client probably deserves a Dante-esque punishment.  This Court,

however, may only use its contempt powers to protect Kenniston's clients, the public, and the

integrity of this Court.

### C.    Kenniston's Actions and History of Non-Compliance Confirm Severe Sanctions Are Required.

#### 1.    The Debtor Was Harmed by Kenniston's Actions.

There is no doubt this Debtor suffered harm by Kenniston's actions.  The Debtor was

faced with the uncertainty of payment after Kenniston refused to immediately turn over the

Payoff Funds.   At least two payments were deducted from the Debtor's pay after she delivered

the Payoff Funds.  [ECF Nos. 31 and 97.]  Further, the Debtor was forced to incur additional

legal fees of $550.00 for replacement counsel.  [ECF No. 117.]

#### 2.    Kenniston Did Not Comply with Court Orders in this Case.

Kenniston's failure to follow his client's instructions is exacerbated by his failure to

comply, and timely comply, with court orders.  Kenniston was ordered to immediately deliver

the Payoff Funds to the Trustee, but it took Kenniston 13 days to deliver the funds.  [ECF No.

90, 95 and 96.]  It was also determined at the February 22 hearing that Kenniston did not turn

over the Savings Account statements to the Trustee, possibly hoping to avoid the conclusions

drawn in this opinion.  [ECF No. 90; *see also* ECF No. 128 at 6:3-19 (Kenniston admitted

another account was involved that he had not disclosed).]

Kenniston also received funds from the Debtor's husband for the Payoff Fee.  Kenniston

did not disclose the Payoff Fee and it is clear it was not earned.  Therefore, the March 2 Order

told Kenniston to turn over the Payoff Fee to the Trustee for application to legal fees of

replacement counsel.

The Trustee's Status Report regarding this obligation shows that, once again, Kenniston

has not satisfied a court order.  [ECF No. 135.]  The Trustee's Status Report also indicates that

the Payoff Funds were sufficient to pay the balance due to the replacement counsel [*Id.*], but the

Debtor still had to pay an additional $550.00 total for replacement counsel fees.  [ECF No. 117.]

Therefore, the Trustee will refund the Payoff Fee to the Debtor when it is received.

### 3.      Kenniston Has Not Followed Kentucky's Rules of Professional Conduct.

Kenniston has failed to represent the Debtor in the manner required by the Kentucky

Rules of Professional Conduct.  *See, e.g.,* KY SCR §§ 3.130(1.1) (competent representation

required); 3.130(1.3) (diligent representation required).   Kenniston admitted that he does not

have an escrow account, which also violates the Kentucky Rules of Professional Conduct.  KY

SCR § 3.130(1.15); *see also Ky. Bar Ass'n v. Greene,* 386 S.W.3d 717, 722 (Ky. 2012) (lawyer

reprimanded for improper use of accounts).  Federal courts expect lawyers to comply with state

rules of conduct and may sanction violations.  *Hornick v. American Commercial Barge Line*,

Case No. 5:07CV-140R, 2008 WL 2168893 (W.D. Ky. May 23, 2008) (federal courts in

10

Kentucky apply the rules adopted by the Kentucky Supreme Court governing professional

conduct).

### 4.    Kenniston Has a History of Problems in this Court.

A court generally takes notice of recurring problems involving a specific attorney over

time.  Usually, procedural errors are isolated gaffes that do not require more than the occasional

order to show cause or an admonition to pay closer attention.  But in rare instances, errors

gradually increase and warnings are not enough to rectify the problem.  Sanctions, sometimes

severe, become necessary to protect the client and the integrity of the system.

Kenniston has been on the Court's radar for some time.  His many procedural and

substantive problems are addressed in four sanctions orders, and the related orders to show

cause, in the following two bankruptcy cases:  (1) *In re Anthony Meran Ball*, Case No.  16-60245

("*Ball I*"); and (2) *In re Anthony Meran Ball*, Case No. 17-61567 ("*Ball II*") (collectively, the

"*Ball Cases*").  The four orders, entered between December 21, 2016 and December 21, 2017,

showed the gradual increase in sanctions that ultimately led to Kenniston's suspension in this

Court for a period of 6 months.  [*See Ball I*, ECF Nos. 137, 265, and 284, attached as Exhibits 1,

2, and 3, respectively; *Ball II*, ECF No. 32, attached as Exhibit 4.]

Kenniston admitted he had committed errors and "the Court had been more than fair with

him" [*Ball II*, ECF No. 17] before the most recent imposition of sanctions on December 21,

2017.  [*Id.*, ECF No. 32.]  Kenniston once again expressed regret and remorse, and promised that

he was taking action to address his issues.  [*Id.*]  At that time, the problems in this case were not

yet known.

In addition to the 6-month suspension, the sanctions order in *Ball II* ordered Kenniston to

transition his files to new counsel and turnover the fees collected in that case to replacement

counsel.  [*Ball II*, ECF No. 32.]  The Trustee was directed to cease distribution of fees in any

active chapter 13 case, but Kenniston was allowed to request payment of fees earned prior to the

time he was suspended.  [*Id.*]  Kenniston also could seek termination of the suspension upon

proof he attended training classes and would not repeat his prior mistakes.  [*Id.*]

        Despite all of his problems and promises, the record in *Ball II* shows he did not timely

transition his files or deliver the legal fees to replacement counsel.  [*Ball II*, ECF No. 44.]

Kenniston was ordered to appear on February 22, 2018 and show cause for his failure to comply

with the December 21 Order.  [*Ball II*, ECF No. 45.]  The hearing coincided with the continued

hearing on the Trustee's request for sanctions in the present matter.  [*Id.*]

        Kenniston admitted he did not have the funds to make the payment, which supports the

prior conclusion that Kenniston misused the Debtor's funds.  Kenniston also admitted he took no

steps to let his clients know he could no longer practice in bankruptcy court, such as a simple

letter to his clients.  [ECF No. 128 at 16:12-18.]  A subsequent contempt order gave Kenniston

additional time to repay the legal fee in installments, which he did not do.  [*Ball II*, ECF Nos. 65,

73.]

        It is abundantly clear from this record that Kenniston willfully disobeys orders from this

Court and willfully disregards his obligations to this Court and his clients.  His excuses and

promises of change lack honesty and candor.

### 5.    More Allegations Against Kenniston Require Separate Consideration.

        The United States Trustee filed the Motion of the United States Trustee for Sanctions,

Disgorgement of Fees, and Entry of an Order to Show Cause Against Richard Kenniston in this

case and in ten other cases.  [*See, e.g.,* ECF No. 137 (there is also an eleventh client alleging

Kenniston did not file a bankruptcy case as promised).]  The United States Trustee asked to administratively consolidate the cases and for an expedited preliminary hearing to coincide with the April 10 hearing.  No one objected to the request, so a preliminary hearing was held and the matters were administratively consolidated under this case.  [ECF Nos. 146 and 147.]

The United States Trustee sanctions motion describes numerous examples of wrongdoing by Kenniston as an attorney in each of the cases.  The problems described suggest the matters dealt with in this case and the *Ball* cases are just the tip of the iceberg.  But Kenniston has not had the opportunity to defend himself against the new allegations, so they are not considered for the contempt findings in this case or the sanctions imposed.  But Kenniston is again put on notice that additional severe sanctions are possible, including a permanent prohibition on practicing law before this Court and the possibility of reciprocal sanctions in other courts.  [*See also* ECF No. 148 (order to show cause and setting evidentiary hearing on the United States Trustee's sanctions motion).]

### D.     Sanctions Are Required to Protect Courts and the Public.

The final sanctions order in *Ball I* entered on August 21, 2017, provided:  "Kenniston is put on notice that he is on probation for six months. During his probation, this Court may consider the problems in this case when addressing any problems attributable to Kenniston in other cases, and may impose additional, more severe sanctions, including prohibition from accepting more cases."  [*Ball I*, ECF No. 284.]  Despite this admonition, Kenniston took money intended to pay off his client's chapter 13 plan during the probationary period.

Based on this opinion and the record, which includes Kenniston's frank admissions of wrongful conduct, there is sufficient evidence to hold Kenniston in contempt for violating court orders and his duties to this Court and his clients.  11 U.S.C. § 105.  A court has inherent

authority and authority under § 105(a) to sanction and discipline attorneys who appear before it. *Grossman v. Wehrle* (*In re Royal Manor Mgmt., Inc.*), 652 F. Appx. 330, 342 (6th Cir. 2016), *cert denied sub nom. Grossman v. Wehrle*, 137 S. Ct. 831, 197, L. Ed. 2d 69 (2017), *reh'g denied*, 137 S. Ct. 1367, 197 L. Ed. 2d. 546 (2017).  Severe sanctions are warranted, but the sanctions herein are still narrowly tailored to be compensatory and corrective, and not punitive.

The nature and causes of Kenniston's actions make it very likely he is not properly caring for his clients in other federal and state courts where he practices.  Therefore, this order is disseminated to other parties for appropriate action.  Further, it is expected that the Office of the United States Trustee and the Chapter 13 Trustee will take any other action if appropriate based on their statutory and ethical obligations.

## III.    CONCLUSION AND ORDER.

Based on the foregoing and the record in this case, it is ORDERED that the Sanctions Motion [ECF No. 84] is GRANTED.  Kenniston is found in contempt and the following sanctions will apply:

1.  Kenniston is again directed to immediately deliver the Payoff Fee to the Trustee, who shall pay the funds to replacement counsel for approved legal fees and costs.  If the legal fees are otherwise paid, the Payoff Fee shall go to the Debtor to offset payment of legal fees for replacement counsel.

2.  Kenniston is suspended from practice before the United States Bankruptcy Court for the Eastern District of Kentucky at least to and through December 31, 2019.  Thereafter, Kenniston may request reinstatement of his right to practice before this Court by filing a request in this case (if closed, he must seek to reopen) that addresses the following:

    a.  Confirmation that Kenniston understands his prior mistakes and does not intend to knowingly or recklessly repeat them;

    b.  Proof Kenniston has complied with all sanctions orders against him, including payment of all amounts due under those orders;

    c.  Proof Kenniston has an escrow account compliant with the Kentucky Rules of Professional Conduct;

    d.  Proof Kenniston's license to practice law in Kentucky or any other jurisdiction or court where he is authorized to practice is in good standing;

    e.  Proof Kenniston has taken at least two hours of continuing legal education addressing his ethical obligations to clients during the preceding six month period;

    f.  Proof Kenniston has taken at least three hours of continuing legal education directly applicable to bankruptcy law during the preceding six month period; and

    g.  Proof Kenniston has attended the ECF training class conducted by the Clerk of Court (http://www.kyeb.uscourts.gov/training) during the preceding six (6) month period.

The CLE provider and class must be ones that would be acceptable to the Kentucky Bar Association to satisfy the annual continuing legal education requirements for attorneys. Examples include classes offered by the Kentucky Bar Association (http://www.kybar.org/page/accreditedprograms), UK/CLE (http://ukcle.com), or the American Bankruptcy Institute (www.abi.org).  A review of the websites for the Kentucky Bar Association and UK/CLE confirms the monetary impact of these requirements is not significant.  For example, the Kentucky Bar Association website indicates there are 9 one-hour ethics programs available on-line for $59.  UK/CLE offers a two-hour ethics program for $100.

3.  Imposition of these sanctions does not preclude subsequent assessment of sanctions, including recovery of legal fees paid but not earned.

4.  This matter shall be referred to the United States District Court for the Eastern
    District of Kentucky for consideration of reciprocal sanctions.

5.  This matter shall be referred to the Kentucky Bar Association for further action in its
    discretion.

16

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
_**Gregory R. Schaaf**_
**Bankruptcy Judge**
**Dated: Thursday, April 12, 2018**
(grs)

EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE

ANTHONY MERAN BALL                                                    CASE NO. 16-60245

DEBTOR

ORDER

This matter is before the Court on an Order to Show Cause [ECF No. 129] for failure to

comply with a Deficiency Order [ECF No. 124].  Show cause orders are generally entered to

remind a party that a required action was not completed.  In this case, a $30.00 fee was not paid

when the Debtor filed a Supplemental Mailing Matrix [ECF No. 112].  The Order to Show Cause

did not trigger action, which could have avoided a show cause hearing.

This should be, but is not, surprising.  This case came on for hearing last month for the

third request to reinstate the case.  Counsel of record did not appear, instead asking another

attorney to appear for him.  Despite the prior dismissals, relief was granted with a comment that

the matter should not have reached that point.

This chapter 13 case was filed on March 7, 2016, but it is not yet confirmed.  There are

129 docket entries so far, which is a large number for a case that has not generated any

substantive issues for decision.  The multiple docket entries are caused in large part by errors that

appear primarily attributable to counsel:

1.  The Debtor filed a skeletal petition, but did not comply with the Order to file all
    documents by March 21, 2016.  [ECF No. 20.]

2.  The Debtor filed his plan timely, but did not serve it on all creditors as required by local
    rule.  [ECF No. 19.]

3. The Debtor was allowed to pay the filing fees in installments, but the installments were not kept current. [ECF No. 28.] The Debtor did not fix the problem within the 14 days allowed [*see id.*], so the case was dismissed on June 1, 2016. [ECF No. 32.]

4. The Debtor filed a motion to reinstate the case on June 10, 2016 [ECF No. 35], which was re-docketed as a motion to set aside the dismissal [ECF No. 38]. A deficiency ordered was entered for failing to meet the notice and opportunity hearing criteria [ECF No. 39], and the Debtor filed a renewed motion to set aside dismissal. [ECF No. 40.]

5. The renewed motion to set aside did not include a proposed order as required by local rule. [ECF No. 43.]

6. The dismissal was set aside on June 24, 2016. [ECF No. 48.]

7. The Debtor moved to continue the July confirmation hearing on July 13, 2016 [ECF No. 54], but the proposed order was defective because it did not include the date of the continued hearing. [ECF No. 57.] Also, the Debtor only included an objection deadline on the docket, not in the motion itself. [ECF No. 56.] The Chapter 13 Trustee ultimately continued the confirmation hearing. [ECF No. 59.]

8. The Debtor moved to continue the August confirmation hearing [ECF No. 61] and once again submitted a defective order. [ECF No. 65.] The Chapter 13 Trustee ultimately submitted an order continuing the confirmation hearing [ECF No. 67].

9. The Debtor filed an amended plan on September 20, 2016 [ECF No. 69], but he again failed to submit a certificate verifying service on creditors. [ECF No. 70]. He ultimately complied on September 30, 2016 [ECF No. 76].

10. At the September 21, 2016 confirmation hearing [ECF No. 71], the Debtor agreed to file information in the record dealing with the 2015 tax returns to remedy one of the issues raised in the most recent trustee's recommendation [ECF No. 53]. The record does not show this occurred, although the most recent trustee's recommendation does not list this as a problem. [ECF No. 107.]

11. The Debtor filed three claim objections on October 7, 2016 [ECF Nos. 83, 85, 87], all of which were overruled because the Debtor did not allow thirty days for objections as required by FED. R. BANKR. P. 3007. [ECF No. 89.].

12. Only one of the claim objections was re-filed on October 19, 2016, but no action has occurred. [ECF No. 97.] It is not clear if the other claim objections are still required.

13. The Debtor objected to a motion for relief from automatic stay [ECF No. 90], but did not set the motion for a hearing. A deficiency order was entered on October 20, 2016. [ECF No. 101.] The creditor ultimately set the motion and objection for hearing. [ECF No. 108.]

14. The Debtor filed an amendment to Schedule D on October 19, 2016 [ECF No. 94], but did not include a separate mailing list pursuant to KYEB LBR 1009-1. [ECF No. 102.]

The Schedule D amendment was not sworn to under penalty of perjury by the Debtor as required by FED. R. BANKR. P. 1008. [*Id.*].

15. The case was dismissed a second time [ECF No. 110] because the Debtor did not fix the deficiencies within fourteen days.

16. The Debtor fixed the deficiencies on November 11, 2016 [ECF Nos. 112-113], and thereafter moved to set aside the dismissal [ECF No. 114].

17. Dismissal was set aside on November 28, 2016. [ECF No. 120.]

18. The Debtor filed a supplemental creditor matrix on November 11, 2016 [ECF No. 112], but did not pay the $30.00 filing fee. A deficiency order was entered on November 29, 2016, allowing three days to pay. [ECF No. 124.]

19. The Debtor did not pay the fee, so the above-referenced show cause hearing was set. [ECF No. 129.]

20. The Debtor also filed several motions on less than the fourteen day notice period required by local rule with no request to shorten time or explanation for the need for expedited relief. [*See* ECF Nos. 40, 61 and 114.]

21. The most recent trustee's recommendation raises a problem with feasibility because secured and administrative claims are not paid within sixty months. [ECF No. 107.]

WHEREFORE, it is hereby ORDERED that the Debtor's counsel immediately pay more

attention to this case and any other case he has before this Court.

It is further ORDERED that:

A. The Debtor's counsel shall use his best efforts to present a confirmable plan at least eight

days before the January 18, 2017, confirmation hearing. [ECF No. 125.] If the Debtor

cannot comply for any reason, he shall provide notice in the record to explain the reasons

for the delay.

B. If unreasonable delays and errors persist in this case:

    i.   This case may be dismissed without further notice for delay that is prejudicial

         to creditors; and

3

     ii.    The Debtor's counsel shall be subject to monetary or other sanctions, including disgorgement of fees and limitations on his practice before this Court.

C. If unreasonable delays and errors are encountered in other cases involving Debtor's counsel before this Court in the next 12 months, then the Debtor's counsel is at risk of similar sanctions.

4

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
**_Gregory R. Schaaf_**
**Bankruptcy Judge**
**Dated: Wednesday, December 21, 2016**
  (grs)

<span style="color:red">EXHIBIT 2</span>

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
## LONDON DIVISION

IN RE

ANTHONY MERAN BALL                                                  CASE NO. 16-60245

DEBTOR

### ORDER

On December 21, 2016, it was ordered "that the Debtor's counsel immediately pay more attention to this case and any other case he has before this Court." [*See* Order, ECF No. 137 ("December 21 Order").] The December 21 Order lists numerous problems in this case that are easily attributable to the Debtor's attorney, Richard Kenniston. The discussion at the December 21, 2016 hearing and the December 21 Order were intended as a wake-up call, which apparently did not work.

The facts in the December 21 Order are the starting point and are incorporated herein. In addition, the December 21 Order also required that Kenniston "use his best efforts to present a confirmable plan at least eight days before the January 18, 2017, confirmation hearing." The discussion herein will confirm Kenniston has not used his best efforts, or, if he did, his efforts are substantially deficient.

The Debtor filed an amended plan within the time required [ECF No. 151], but the plan was not confirmable. The Chapter 13 Trustee filed her Sixth Amended Trustee's Report and Recommendation as to Confirmation per Amended Plan (Doc. No. 151), which set out the issues. [ECF No. 154.] The first problem is highlighted by the title of the Trustee's report: this is the

1

sixth try and the Debtor still has problems.  This chapter 13 case was filed on March 7, 2016, but it was not confirmed almost one year later.

Next, Schedule J showed $228 available to fund the plan, yet the sixth amended plan only proposed a payment of $155.04.  [*Id.*]  Also, the plan was still not feasible because the total pool would not pay secured, priority and administrative claims in full.  [*Id.*]  The Debtor's plan again failed to comply with common bankruptcy code provisions, even though the Trustee had raised these issues previously.

Following the Sixth Recommendation, the Debtor filed another amended plan.  [ECF No. 169.]  The payment issue was corrected, but the Debtor's plan was still not feasible.  [ECF No. 175.]  The Debtor filed another amended plan on February 17, 2017.  [ECF No. 177.]  On February 21, 2017, the Trustee filed an Eighth Amended Trustee's Report and Recommendation as to Confirmation per Amended Plan (Doc. No. 177) noting only that the Debtor was delinquent in his payments.  [ECF No. 187.]  At last, the Debtor had fixed the feasibility problem.

Despite the delinquent payments, the Debtor's plan was confirmed on February 22, 2017 [ECF No. 188], because he agreed to a 90-day probation order.[1]  Probation orders are a common way to address delinquent payments in this District.  A debtor is given a limited period to make up the late payments.  A debtor must also make all payments on time for the next twelve months.  Failure to do either will result in dismissal of the case.

At the time of confirmation, an order was prepared that recognized the additional problems described above and the issues noted hereafter that had accrued up to that date.  Nothing was done because it appeared matters were resolved by confirmation.  The record since February 22, 2017, shows that is not the case.  In addition to the problems noted in the December 21 Order and herein, the following additional deficiencies attributable to Kenniston are noted:

---

[1] An Order confirming the plan was not entered until April 5, 2017.  [ECF No. 213.]

1. On January 4, 2017, the Debtor filed a Motion for Avoidance of Preferential Transfer of Debtor's Property and Turnover of Preferentially Transferred Property Held by Bank and two objections to claims, [ECF Nos. 138, 140, and 142], but the proposed orders were defective.[2] [ECF Nos. 139, 141, 143 and 144.] Although the notice period for the objections to claims had passed, one objection remained unaddressed because no proposed order was ever tendered.

2. The Debtor filed two objections to claim to fix the deficiency noted in item 11 of the December 21 Order. [ECF Nos. 146 and 148.] The filer only gave 9 days notice in CM/ECF to the creditor, even though the prior objections were overruled because the Debtor did not give the required 30 days notice. [*See* ECF No. 137, item 11.] *See also* FED. R. BANKR. P. 3007. The Court Clerk corrected the error in the ordinary course, so the objections were not overruled.

3. The amended chapter 13 plan filed on January 10, 2017, was not served on all creditors as required by KYEB LBR 3015-2(a). [ECF Nos. 151-52]. This is a recurring problem that confirms counsel did not pay more attention, as previously ordered. [*See, e.g.,* ECF No. 19, 70.]

4. The Motion for Avoidance of Preferential Transfer of Debtor's Property and Turnover of Preferentially Transferred Property Held by Bank came on for hearing on January 18, 2017. [ECF No. 140]. The Motion was denied because it sought relief that could only come through an adversary proceeding. [ECF No. 156.] *See also* FED. R. BANKR. P. 7001.

5. On February 7, 2017, the Debtor filed a motion to suspend plan payments [ECF No. 165] and set it for hearing on February 22, 2017. A motion to amend a plan requires 21-days notice, FED. R. BANKR. P. 2002(a), but the Debtor did not give a reason for, or request the hearing on, shortened notice pursuant to KYEB LBR 9014-1(c).[3] (The list of problems shows the Debtor routinely fails to consider notice requirements.)

6. On February 13, 2017, the Trustee filed an objection [ECF No. 174] to the Debtor's motion for suspension of plan payments [ECF No. 165] noting a number of issues, including Debtor's delinquency in plan payments.

7. The Debtor filed another Amended Chapter 13 Plan on February 17, 2017. [ECF No. 177.]

8. On May 15, 2017, Debtor filed a Motion to Continue Hearing [ECF No. 222] and linked it to a Motion filed by creditor United Cumberland Bank, which was set on a notice and opportunity basis. Therefore, no continuance of hearing was necessary.

---

[2] A long-standing local rule requires that any motion must attach a proposed order. KYEB LBR 9013-1(d). *See also* the Administrative Procedures Manual promulgated by the Court which is posted on the Court's Website. This is a recurring problem in this case.

[3] "A person seeking to reduce any applicable notice period must clearly set out the request in the underlying motion, objection, application or other paper or in a separate motion."

9.  Ironically and consistently, the proposed order submitted for the Motion to Continue
    hearing (separately again, *see* n. 2) [ECF No. 223] was defective because it did not
    contain a new hearing date, time and location.  [ECF No. 224.]

10. Kenniston did not show for his Motion to Continue Hearing that he set for May 17, 2017
    [ECF No. 228].  The Court verbally overruled the motion to continue hearing.

Kenniston's lack of care and concern for accuracy and the law and procedure are also

evident in the adversary proceeding filed on March 20, 2017.  [*Ball v. United Cumberland Bank*,

Adv No. 17-6026.]  A notice of deficiency immediately followed the Complaint because the

Complaint did not contain the statement regarding consent to entry of final orders or judgment

by the Bankruptcy Court.  [*Id.* at ECF No. 2; *see also* FED. R. BANKR. P. 7008.]  Further, the

amended Complaint was dismissed for failure to state a claim, although the Debtor was allowed

14 days to amend.  [*Id.* at ECF No. 14.]

The Debtor did amend the Complaint, and then he amended it again (for a total of four

complaints filed).  [*Id.* at ECF Nos. 15 and 17.]  The final amended Complaint was dismissed

with prejudice because it did not state a claim.  [*Id.* at ECF Nos. 27-28.]  The related

memorandum opinion noted many technical issues that more careful drafting could have

avoided.  [*Id.*]

The items addressed in this Order show Kenniston is not paying more attention.

Mistakes happen and typographical mistakes or the occasional lapse of attention are ignored all

the time.[4]  Kenniston's lapses described herein and in the December 21 Order go far beyond

minor problems that are seen every day by a court with over 10,000 cases.  The problems suggest

harm to Kenniston's current client and show the possibility of real harm to other clients if

something is not done.

---

[4] The record reflects amended orders in both the main case and the adversary proceeding to correct certain
grammatical errors by the Court.

4

The information set out in this Order alone, whether or not the December 21 Order is considered, suggest sanctions are required.  Kenniston will have an opportunity to raise defenses and argue for mitigation or elimination of any proposed sanctions or other possibly severe sanctions that are determined after a hearing.

WHEREFORE, it is hereby ORDERED that Richard Kenniston shall appear **at 9:00 a.m. on August 16, 2017, in the United States Bankruptcy Court, U.S. District Courtroom C, Third Floor, 310 South Main Street, London, Kentucky,** and show cause why the following sanctions should not be assessed at a hearing:

a. Kenniston is precluded from accepting and filing new bankruptcy cases until he complies with the terms hereof.  Kenniston may continue to work on any existing cases, but any problems in those cases may lead to more sanctions.

b. Kenniston shall work with the Debtor to locate new counsel and use reasonable efforts to efficiently transition his files to replacement counsel within 30 days.

c. Kenniston shall refund all legal fees to the Debtor by turning over such funds to replacement counsel as a retainer for any future work performed.

d. At any time after November 30, 2017, Kenniston may apply to again take on new bankruptcy cases.  He shall notice his application for hearing and be prepared to explain the steps he has taken to make sure the problems encountered in this case will not recur.

5

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
**_Gregory R. Schaaf_**
**Bankruptcy Judge**
**Dated: Friday, July 21, 2017**
**(grs)**

<span style="color:red">EXHIBIT 3</span>

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
## LONDON DIVISION

IN RE

ANTHONY MERAN BALL                                    CASE NO. 16-60245

DEBTOR

### ORDER

On July 21, 2017, Richard Kenniston, attorney for the Debtor, was ordered to show cause why sanctions are not required for the reasons cited in the Order, which included a detailed history of excessive procedural deficiencies [ECF No. 265]. Kenniston filed a Response to the Order to Show Cause [ECF No. 279[1]] and a hearing was held on August 16, 2017.

Kenniston did not present evidence, primarily standing on his Response. He also addressed questions from the Court regarding errors in filings after the July 21 Order and other problems. The record in this case and the oral record of the August 16 hearing support the imposition of sanctions. Further findings are not required because Kenniston ultimately consented to the sanctions imposed by this Order.

Based on his comments at the August 16 hearing and in his Response, Kenniston will not be prohibited from filing new bankruptcy cases. Kenniston is put on notice that he is on probation for six months. During his probation, this Court may consider the problems in this case when addressing any problems attributable to Kenniston in other cases, and may impose additional, more severe sanctions, including prohibition from accepting more cases.

It is therefore ORDERED that the following sanctions shall apply:

---

[1] Counsel's Response arguing against sanctions related to his mistakes refers to the Order to Show Cause as a "motion." This is one more statement in support of the sanctions imposed hereby.

1.      Kenniston shall work with the Debtor to locate new counsel and use reasonable efforts to efficiently transition his files to replacement counsel within 30 days.

2.      Kenniston shall refund all legal fees received in this case by delivering them to replacement counsel as a retainer for any future work performed.

2

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
**_Gregory R. Schaaf_**
**Bankruptcy Judge**
**Dated: Monday, August 21, 2017**
**(grs)**

EXHIBIT 4

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF KENTUCKY
### LONDON DIVISION

IN RE

ANTHONY MERAN BALL                                  CASE NO. 16-60245

DEBTOR

IN RE

ANTHONY MERAN BALL                                  CASE NO. 17-61567

DEBTOR

### SANCTIONS ORDER

Richard Kenniston represented the Debtor Anthony Meran Ball in two bankruptcies: (1) Case No. 16-60245, which was dismissed for failure to make plan payments; and (2) Case No. 17-61567, which is currently pending.  Sanctions against Kenniston are warranted for the reasons hereafter provided.

I.   **BACKGROUND**

The Debtor's first chapter 13 bankruptcy, Case No. 16-60245, was filed on March 7, 2016.  The case was rife with an extraordinary amount of procedural deficiencies attributable to Debtor's counsel.  Following a show cause hearing on December 21, 2016, Kenniston was warned that further errors could result in dismissal of the case and/or imposition of monetary or other sanctions, including disgorgement of fees and limitations on his practice before this Court. [Case No. 16-60245, ECF No. 137.]  Kenniston was also notified that if "unreasonable delays and errors are encountered in other cases involving Debtor's counsel before this Court in the next 12 months, then the Debtor's counsel is at risk of similar sanctions."  [*Id.*]

1

Kenniston continued to commit errors and another Order to show cause was entered on July 21, 2017. [*Id.*, ECF No. 265 ("July 21 Order").] Kenniston filed a response that suggested he had learned from his mistakes and a hearing was held on August 16, 2017. [*Id.*, ECF Nos. 279, 282.] Based on the arguments at the hearing and Kenniston's response, Kenniston was ordered on August 21, 2017, to (i) work with the Debtor to locate new counsel and transition his files within 30 days; and (ii) refund all legal fees received by delivering them to replacement counsel as a retainer for any future work performed. [*Id.*, ECF No. 284 ("August 21 Order").] Kenniston was also placed on notice that, for the next six months, "the Court may consider the problems in this case [Case No. 16-60245] when addressing any problems attributable to Kenniston in other cases, and may impose additional, more severe sanctions, including prohibition from accepting more cases." [*Id.*]

The August 21 Order indicated that Kenniston continued to commit errors after the July 21 Order to show cause was entered. [*See Id.* ("He also addressed questions from the Court regarding errors in filings after the July 21 Order and other problems.").] The problems after July 21 were omitted from the August 21 Order because Kenniston agreed to the imposition of sanctions, but they are provided below to supplement the written record:

1. The Debtor appealed the Order Granting Relief from Stay on July 12, 2017. The following deficiencies are described in a deficiency order entered August 8, 2017 [Case No. 16-60245, ECF No. 275]:

   a. The Notice of Appeal did not include the names of all the parties to the appeal or the names, addresses and telephone numbers of the respective attorneys. [*Id.*, ECF Nos. 250, 252.]
   b. The Debtor timely filed an amended notice to fix the problem, but the amended notice was unsigned, resulting in another deficiency order. [*Id.*, ECF Nos. 264, 266.]
   c. The Debtor did not timely fix that deficiency, only acting after the creditor moved to strike. [*Id.*, ECF Nos. 272, 273.]

2

2. Kenniston made numerous errors in Adversary Proceeding No. 17-6026, which was dismissed on July 17, 2017 [Case No. 17-6026, ECF No. 28]:

   a. The Motion to Alter, Amend or Vacate the dismissal order, filed on August 13, 2017, only contains the main case caption (no information for the adversary proceeding was provided).  [Case No. 17-6026, ECF No. 34.]

   b. The Motion to Shorten Time for action related to the Motion to Alter, Amend or Vacate only contains the main case caption (no information for the adversary proceeding was provided).  [*Id.,* ECF No. 38.]

   c. The Motion to Shorten Time related to the Motion to Alter, Amend or Vacate did not attach a proposed order, as required by local rule.[1]  [*Id.*, ECF No. 39.]

   d. The Motion to Alter, Amend or Vacate cites Federal Rule of Civil Procedure 59 without noting why it is applicable to the adversary proceeding.

   e. Civil Rule 59 is made applicable by Federal Rule of Bankruptcy Procedure 9023, which requires filing within 14 days of the judgment.  The Motion to Alter, Amend or Vacate was filed 27 days after the judgment was entered.  [*Id.,* ECF No. 34.]

A month after entry of the August 21 Order, the Trustee filed a Report of Inadequate Plan Payments that stated the Debtor failed to comply with a Probation Order entered in March 2017. [Case No. 16-60245, ECF No. 287.]  Therefore, the prior case was dismissed on September 20, 2017.  [*Id.*, ECF No. 289.]  There is no evidence in the record of that case that new counsel was obtained.

Despite the obligation to help the Debtor find replacement counsel and transition his files in the August 21 Order, Kenniston filed a new chapter 13 bankruptcy case for the Debtor on November 26, 2017.  [Case No. 17-61567, ECF No. 1.]  Therefore, Kenniston was ordered to show cause why additional sanctions are not required.  [*Id.*, at ECF No. 8; Case No. 16-60245, ECF No. 294.]  Kenniston was also ordered to prove he informed the Debtor of his obligations under the August 21 Order and had attempted to locate replacement counsel seven days before the hearing.  [*Id.*]  He did not comply.

---

[1] The failure to attach proposed orders to his motions was a recurring problem, confirming that Kenniston did not learn from past mistakes.

Kenniston's problems continued after entry of the August 21 Order.  In this case, Kenniston did not file a certificate of service of chapter 13 plan and a deficiency order was entered on November 28, 2017.  [Case No. 17-61567, ECF No. 9.]   The deficiency order allowed 7 days to comply, but Kenniston did not timely act.  The failure to serve a proposed plan is a recurring problem in cases that Kenniston handles.  [*See, e.g.,* Case Nos. 17-51649, 17-51692, 17-51818, 17-52092, 17-60892.]  Kenniston also failed to serve the proposed plan in the two personal bankruptcy cases Kenniston filed for himself and his spouse in 2017.[2]  [Case No. 17-50156, ECF No. 17; Case No. 17-52283, ECF No. 9.]

Kenniston filed a Response to Motion to Show Cause[3] that essentially admits he did not act properly and sanctions are warranted.  [Case No. 17-61567, ECF No. 17.]  A hearing was held on December 20, 2017.  Kenniston appeared and did not mount a defense beyond his response or argue against the relief imposed by this Order.

## II.   <u>NOTICE IS SUFFICIENT</u>

Kenniston had sufficient notice and an opportunity to respond and defend himself prior to imposition of sanctions in the prior case.  The first Order to show cause was entered December 8, 2016 [Case No. 16-60245, ECF No. 129] and was heard on December 21, 2016.   The only immediate obligations were a deadline to file a revised plan and an order to "immediately pay more attention to this case and any other case [Kenniston] has before this Court."  [*Id.*, ECF No. 137.]

---

[2] Kenniston also provided inaccurate information regarding the likelihood of success of his second case after his first 2017 bankruptcy case was dismissed for failure to make plan payments.  [Case No. 17-52283, ECF Nos. 24, 27, 28 and 31.]  Kenniston's personal bankruptcy cases are before another judge.

[3] Note the title indicates it is a response to a "motion" to show cause.  Obviously, it was the Court's Order to show cause that required a response, further emphasizing the lack of knowledge or carelessness of counsel that require the actions directed by this Order.

The next Order to show cause was entered on July 21, 2017, after repeated filing issues specifically addressed therein.  [*Id.*, ECF No. 265.]  The hearing on the Order was held on August 16, 2017.  Kenniston was provided an opportunity to present evidence, but chose to stand on his written response filed at 10:24 p.m. on the eve of the hearing.  [*Id.*, ECF No. 279.]  Further, he agreed to the sanctions imposed at the hearing, resulting in the abbreviated August 21 Order.

Kenniston has had ample time to prepare for the hearing on the current Orders to show cause.  The Show Cause Order in this case was entered on November 27, 2017, one day after the petition was filed.  [Case No. 17-61567, ECF No. 8; *see also* ECF No. 13 (changing the hearing time to facilitate presentation of evidence).]  The Show Cause Order in the prior case was entered December 5, 2017, and raises the same issues.  [Case No. 16-60245, ECF No. 294.]  Therefore, Kenniston has had over three weeks to organize a response.

Further, notice of the potential for sanctions are supported by the record.  The December 21 Order and August 21 Order in the prior case both informed Kenniston more severe sanctions were possible.  *See supra.*   Despite these warnings, the record confirms Kenniston has not improved.

III.   <u>**SANCTIONS ARE WARRANTED**</u>

Based on this review, there is clear and convincing evidence that Kenniston knowingly, or with willful ignorance, violated the August 21 Order in Case No. 16-60245 when he (i) did not take steps to locate new counsel for the Debtor and (ii) filed the petition for the Debtor in this case.  Further, the recitation of problems in this Order confirm Kenniston is completely unfamiliar with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and applicable local rules of procedure, or he willfully refuses to follow them.  Therefore,

appropriate sanctions are required to protect the integrity of the federal bankruptcy system and the general public.

The December 21 Order started by telling Kenniston to pay more attention.  The August 21 Order recognized that the earlier admonitions did not work.  But the August 21 Order backed off the harsher proposed sanctions in the July 21 Order to show cause [Case No. 16-60245, ECF No. 265] based on assurances from Kenniston that were possibly sincere, but completely erroneous.  Thus, it is necessary to impose harsher sanctions at this time because the prior more lenient efforts have failed to remedy the problems noted.

These sanctions are based on this Court's contempt powers and are civil in nature. 11 U.S.C. § 105.  The sanctions are narrowly tailored to the goal of educating Kenniston regarding his obligations as a licensed attorney acting in a federal bankruptcy court.  The sanctions will also force Kenniston to educate himself regarding bankruptcy law and his ethical obligations to clients he represents before this Court.

Based on the foregoing, it is ORDERED:

1.      Kenniston may not practice law in the United States Bankruptcy Court for the Eastern District of Kentucky for a period of not less than six (6) months (except as to any fee issue as hereafter described).

2.      Kenniston shall work with all debtors he currently represents to locate new counsel and use reasonable efforts to efficiently transition his files to replacement counsel within 30 days.

3.      Kenniston shall refund any legal fees received in this or the Debtor's prior case by delivering them to replacement counsel as a retainer for any future work performed.  If new counsel is not retained any such fees shall be delivered to the Chapter 13 Trustee.

4.      The chapter 13 trustee shall cease making distributions to Kenniston for fees in

any active chapter 13 case as soon as administratively practical.  In connection therewith:

    a.  Kenniston may request payment of any earned fees not already paid by filing a motion with appropriate proof that the fees were incurred and the client was not injured by Kenniston's actions.

    b.  The motion must be made within two (2) months of the date of entry of this Order or the right to any further payment of fees is assessed as damages that are available to pay replacement counsel.

    c.  The motion must be set for hearing on at least 14 days notice and shall be served on the debtor, replacement counsel, any trustee and the Office of the United States Trustee.

    d.  The Chapter 13 Trustee shall submit proposed orders in each case that address the above requirements and other provisions that facilitate her administration of legal fees in affected cases.  The proposed order may deviate from items (a)-(c) if there is a better way to handle something or specific adjustment is required in all or any cases.

5.      Kenniston may request reinstatement of his right to practice law before this Court

at any time after six (6) months from the date of entry of this Order by filing a request in this

case (whether or not closed) that addresses the following:

    a.  Kenniston's confirmation that he understands his prior mistakes and does not intend to knowingly or recklessly repeat them.

    b.  Proof Kenniston has taken at least two (2) hours of continuing legal education addressing his ethical obligations to clients during the preceding six month period.

    c.  Proof Kenniston has taken at least three (3) hours of continuing legal education directly applicable to bankruptcy law during the preceding six month period.

    d.  Proof Kenniston has attended the ECF training class conducted by the Clerk of Court (http://www.kyeb.uscourts.gov/training) during the preceding six (6) month period.

The CLE provider and class must be ones that would be acceptable to the Kentucky Bar

Association to satisfy the annual continuing legal education requirements for attorneys.

Examples include classes offered by the Kentucky Bar Association

(http://www.kybar.org/page/accreditedprograms), UK/CLE (http://ukcle.com), or the

American Bankruptcy Institute (www.abi.org).  A review of the websites for the

Kentucky Bar Association and UK/CLE confirms the monetary impact of these

requirements is not significant.  For example, the Kentucky Bar Association website

indicates there are 9 one-hour ethics programs available on-line for $59.  UK/CLE offers

a two-hour ethics program for $100.

6.     Imposition of these sanctions does not preclude subsequent assessment of

damages to injured parties, including recovery of legal fees paid.

8

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
**_Gregory R. Schaaf_**
**Bankruptcy Judge**
**Dated: Thursday, December 21, 2017**
**(grs)**