UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON AND LONDON DIVISIONS

IN RE

SHANNON KAYE DENNY, ET AL.                PROCEDURALLY CONSOLIDATED
                                             UNDER CASE NO. 15-51918
DEBTOR


OPINION AND ORDER IMPOSING SANCTIONS
ON RICHARD G. KENNISTON

This matter is before the Court on the Motion of the United States Trustee for Sanctions, Disgorgement of Fees, and Entry of an Order to Show Cause Against Richard Kenniston. [*In re Denny,* Case No. 15-51918 ("*Denny*"), ECF No. 137 ("Current Sanctions Motion").] The United States Trustee filed the Current Sanctions Motion in ten other cases that are procedurally consolidated with this case.[1]  [*Denny,* ECF No. 147.]

Kenniston did not appear at the preliminary hearing held on April 10, 2018. The preliminary showing indicated Kenniston was guilty of unprofessional conduct and failed to properly represent multiple clients in violation of District Court Local Rule 83.3(a)(2). *See generally* KYEB LBR 1001-3 (adopting the district court rule). Therefore, an Order to show cause was entered and set for hearing on May 8, 2018. [*Denny,* ECF No. 148.] The Order to show cause directed Kenniston to provide a written response to the U.S. Trustee's allegations by April 24, 2018, and appear at the hearing. No response was filed and Kenniston did not appear.

---

[1] The other cases are: *In re Ball,* Case No. 16-60245; *In re Ball,* Case No. 17-61567*; In re Richardson,* Case No. 17-60892; *In re Moore,* Case No. 17-51398; *In re Robertson,* Case No. 17-51649; *In re Harrison,* Case No. 17-51692; *In re Hays,* Case No. 17-51818; *In re Hocker,* Case No. 17-52092; *In re King,* Case No. 18-50195; and *In re Hendrickson,* Case No. 18-60150.

The U.S. Trustee has shown that Kenniston failed multiple clients in many ways. The evidence admitted without objection at the May 8 hearing provides clear and convincing evidence of Kenniston's flagrant disregard for statutory and procedural obligations throughout his practice and the related substantial harm to his clients. Kenniston was already severely sanctioned in this matter, and more severe sanctions are necessary to protect the public and the integrity of the Court.

## I. FACTS AND PROCEDURAL HISTORY.

### A. Previous Findings Affecting Kenniston and His Clients.

The Opinion and Order Finding Richard G. Kenniston in Contempt and Imposing Sanctions found that Kenniston was in contempt of court orders and determined he failed to perform his obligations to his client, Shannon Denny. [*See Denny,* ECF No. 150 (the "Denny Contempt Order").] The Denny Contempt Order provided: "The record in this case confirms by clear and convincing evidence that Kenniston intentionally misappropriated [his client's funds] for his own use without just cause and against his client's instructions." [*Id.*] It was also determined that Kenniston violated Kentucky's Rules of Professional Conduct because he did not have an escrow account and did not provide competent and diligent representation. [*Id*. at 10 (citing KY SCR §§ 3.130(1.15), (1.1), and (1.3)).]

The Denny Contempt Order also recognized Kenniston's history of problems that resulted in increasingly severe sanctions. [*Id*. at 11-12.] The facts and history of his many problems are not repeated, but they are incorporated herein and support this decision. The Denny Contempt Order imposed sanctions against Kenniston, including suspension of practice before this Court at least through December 31, 2019. [*Id.*] The Order also warned that the

imposition of sanctions did "not preclude subsequent assessment of sanctions, including recovery of legal fees paid but not earned." [*Id.*]

### B. The Current Allegations.

The U.S. Trustee alleges in the Current Sanctions Motion that Kenniston violated 11 U.S.C. §§ 526-528,[2] which create obligations for debt relief agencies. The U.S. Trustee also alleges Kenniston violated Kentucky Rule of Professional Conduct ("Kentucky Rule") 1.15, which addresses a lawyer's responsibility to safeguard a client's property; Kentucky Rule 3.3, which prohibits attorneys from making any false statement of fact or law to the court; and Kentucky Rule 1.1, which provides that all attorneys give their clients competent representation. KY SCR §§ 3.130 (1.15), (3.3), (1.1). The U.S. Trustee seeks permanent disbarment and return of fees and other money paid by his clients.

Kenniston was previously ordered to disgorge legal fees to Anthony Meran Ball and Shannon Denny due to his many missteps in those clients' cases. [*See In re Ball,* Case No. 17-61567 ("*Ball II*"), ECF No. 32; *Denny,* ECF No. 150.] The Current Sanctions Motion seeks disgorgement of the following fees received by Kenniston:

| Case/Client(s) | Case Number | Fee Amount | Record Location |
| --- | --- | --- | --- |
| *In re Richardson* | 17-60892 | $1,500.00 | ECF No. 1 at 41. |
| *In re Moore* | 17-51398 | $800.00 | *Denny,* ECF No. 155, Exh. 3. |
| *In re Robertson* | 17-51649 | $1,000.00 | ECF No. 1 at 41. |
| *In re Hays* | 17-51818 | $350.00 | ECF No. 1 at 41. |
| *In re Hocker* | 17-52092 | $960.00 | *Denny,* ECF No. 155, Exh. 2. |

The Current Sanctions Motion argues Kenniston received fees in other cases, including *In re Hendrickson*, Case No. 18-60150, *In re King*, Case No. 18-50195 and *In re Harrison*, Case

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

No. 17-51692. Kenniston also received money from Chie Chie Worsham for a bankruptcy case he never filed. The legal fees in *King* were repaid, first with a bounced check and then in cash. [Current Sanctions Motion at 6.] Insufficient evidence was provided regarding legal fees paid in *Harrison* or *Hendrickson*. Kenniston admitted he received payment in *Worsham*, but the amount was not disclosed.

Therefore, the unproven fees are not addressed in this decision. Nothing herein precludes these parties from seeking recovery of legal fees and other actual damages in this Court or any other forum upon presentation of proof of the amounts due.

## II. DISCUSSION.

### A. The Evidence of the Parties Is Admitted.

The U.S. Trustee's Witness and Exhibit List attached three exhibits. [*See Denny,* ECF No. 155.] Exhibit 1 contains excerpts from the 341 Meeting of Creditors held on March 26, 2018, in Kenniston's personal bankruptcy case, being Case No. 18-50302. No party objected, so Exhibit 1 is admitted. *See* FED. R. EVID. 103(a)(1).

Exhibit 2 is written as the affidavit of the Debtor in *Hocker*, but it was executed by the Debtor's daughter, Kimberly Honaker. Honaker acted for the Debtor under a power of attorney. The affidavit shows she was present at all meetings with Kenniston and was the individual who took the actions described in the affidavit. No party objected, so Exhibit 2 is accepted as the testimony of Honaker and admitted. *See* FED. R. EVID. 103(a)(1).

Exhibit 3 is an affidavit of Leigh Anne Moore, the Debtor in *Moore*. No party objected and Exhibit 3 is admitted. *See* FED. R. EVID. 103(a)(1).

The chapter 13 Trustee sought leave to late-file a copy of a check from Leigh Ann Moore to Felicite Kenniston, Kenniston's spouse. [ECF Nos. 156-57.] No party objected and there was

no prejudice to any party, so the copy is admitted as the Chapter 13 Trustee's Exhibit 1. [*Denny,* ECF No. 160.]

After the hearing, the U.S. Trustee filed a Supplement to the United States Trustee's Motion for Sanctions to name an additional party harmed by Kenniston, Sally McQuinn. [*Denny,* ECF No. 161.] The Supplement also disclosed fees paid by the injured parties to replacement counsel in their bankruptcy cases. But the Supplement is not supported by admissible evidence and Kenniston has not had an opportunity to address the information. Therefore, no action is taken on the Supplement. The failure to address the information in the Supplement in this decision does not preclude the parties from seeking recovery of legal fees and other actual damages in this Court or any other forum.

### B. Kenniston Failed to Follow Code Provisions Governing Debt Relief Agencies.

#### 1. Kenniston Acted as a Debt Relief Agency.

A "debt relief agency" is "any person who provides any bankruptcy assistance to an assisted person." 11 U.S.C. § 101(12A). "Bankruptcy assistance" includes "any … services sold or otherwise provided to an assisted person with the express or implied purpose of … providing legal representation with respect to a case or proceeding under this title." 11 U.S.C. § 101(4). An "assisted person" includes "any person whose debt consists primarily of consumer debts and the value of whose nonexempt property is less than $192,450." 11 U.S.C. § 101(3). There is no objection to the characterization of each of the clients identified in the Current Sanctions Motion as an "assisted person."

The definition of a debt relief agency includes attorneys. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 239 (2010). Therefore, Kenniston qualifies as a debt relief agency because he is a person who provided legal representation to assisted persons in exchange

5

for payment of money. *See* 11 U.S.C. § 101(12A). An attorney who qualifies as a debt relief agency must provide disclosures to assisted persons and execute a written contract with any assisted person. 11 U.S.C. §§ 527, 528(a). Further, the attorney shall not:

> (1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;
> (2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;
> (3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—
> (A) the services that such agency will provide to such person; or
> (B) the benefits and risks that may result if such person becomes a debtor in a case under this title …

11 U.S.C. § 526(a)(1)-(3).

### 2. 11 U.S.C. § 526(a)(1): A Debt Relief Agency Must Perform All Services Promised to an Assisted Person.

The Denny Contempt Order explains how Kenniston took funds from Denny to pay off her chapter 13 plan, but used the money for his own purposes. [Denny Contempt Order.] Kenniston also admitted accepting fees from Chie Chie Worsham for a bankruptcy case he never filed. [*Denny*, ECF No. 155, Exh. 1 at 20:13-21:2.] This testimony and the record in *Denny* provide clear and convincing evidence that Kenniston failed to provide promised services to at least two of the parties identified in the Current Sanctions Motion.

### 3. 11 U.S.C. § 526(a)(2): A Debt Relief Agency Cannot Make False Statements in Filings.

A debtor is required to pay the filing fee prescribed by 28 U.S.C. § 1930 with the petition unless the debtor submits a signed application stating that the debtor is unable to pay the filing fee except in installments. FED. R. BANKR. P. 1006(b)(1). The evidence shows that Kenniston

repeatedly lied to this Court by filing multiple applications to pay the filing fee in installments under the false pretense that his clients had signed the application and could not pay the filing fee.

Kenniston filed Hays' petition with an Application for Individuals to Pay the Filing Fee in Installments on September 11, 2017.  [*In re Hays,* Case No. 17-51818 ("*Hays*"), ECF No. 4.]  But Kenniston admitted he received a $350.00 filing fee and then used the money for other purposes because "we were trying to make a living … ."  [*Id.* at 23:6-18.]  Hays' case was dismissed for failure to pay the filing fee on October 18, 2017.  [*Hays,* ECF No. 16.]

Hocker received notice from the Court on October 25, 2017, that Kenniston filed her petition and that a request to pay the filing fee in installments was granted.  [*Hocker,* ECF Nos. 3, 8.]  Honaker gave Kenniston $610.00 pre-petition for the filing and attorney fees.  [*Denny,* ECF No. 155, Exh. 2 ¶¶ 3, 6.]  Honaker was not even aware that her mother could have paid the filing fee in installments.  [*Denny,* ECF No. 155, Exh. 2 ¶ 8.]  Kenniston never paid the filing fee, although the case was dismissed because Kenniston also did not file schedules and other required papers.  [*See Hocker,* ECF No. 20.]  The case was later reopened by replacement counsel and the Court Clerk received the filing fee on February 15, 2018.

Moore testified that she paid Kenniston $400.00 before he filed her petition, and that amount included the filing fee.  [*Denny,* ECF No. 155, Exh. 3 ¶ 1.]  Kenniston filed her petition on July 13, 2017, and obtained approval to pay the filing fee in installments. [*Moore,* ECF Nos. 3, 7.]  Kenniston did not make the installment payments, so Moore's case was dismissed on October 3, 2017.  [*Moore,* ECF No. 37.]  Kenniston paid the filing fee on October 5, 2017, to reinstate the case.

Kenniston also made false disclosures regarding legal fees. In *Moore*, Kenniston's certified Disclosure of Compensation of Attorney indicated he received an $800.00 fee prepetition. [*Moore,* ECF No. 1 at 50.] But Moore testified she paid half the fee before he filed her petition and paid the rest after he filed. [*Denny,* ECF No. 155, Exh. 3.] The Chapter 13 Trustee's Exhibit 1, Moore's check for $100.00 written out to Kenniston's wife post-petition on October 27, 2017, supports her testimony. [*Denny,* ECF No. 157-1.]

The certified Disclosures of Compensation of Attorney for Debtor(s) in *Denny, Richardson*, and *Robertson*, confirm Kenniston received enough money prepetition from each client to pay the full $310 filing fee. [*Denny,* ECF No. 1 at 31 ($1,500.00 received prepetition); *Richardson,* ECF No. 1 at 41 ($1,500.00 received prepetition); *Robertson,* ECF No. 1 at 41 ($1,000.00 received prepetition).] Further, Kenniston admitted he collected filing fees as part of any prepetition funds received. [*Denny,* ECF No. 155, Exh. 1 at 7:25-8:3.] Therefore, Kenniston knowingly filed inaccurate disclosures in each of those cases.

Kenniston also specifically admitted that he routinely moved to pay the filing fee in installments without his clients' knowledge. [*Denny,* ECF No. 155, Exh. 1 at 24:19-21.] The record contains clear and convincing evidence that Kenniston made false statements in documents filed in at least six of the cases addressed by the Current Sanctions Motion.

4. **11 U.S.C. § 526(a)(3): A Debt Relief Agency May Not Misrepresent the Services It Will Provide.**

A debt relief agency may not mislead an assisted person about the services it will provide. *See, e.g., Jonak v. McDermott,* 511 B.R. 586, 601 (D. Minn. 2014) (use of the business name the "Affordable Law Center" was a misrepresentation because the defendant was not an attorney); *McDow v. Am. Debt Free Ass'n (In re Spence),* 411 B.R. 230, 241 (Bankr. D. Md.

2009) (it was misleading to suggest the debt relief agency would file a bankruptcy case when an outside firm filed the petition). A material omission that misleads the assisted person is a misrepresentation. *See* 11 U.S.C. § 526(a)(3).

On December 19, 2017, Honaker contacted Kenniston to discuss the upcoming meeting of creditors. [*Denny,* ECF No. 155, Exh. 2 ¶ 12.] Kenniston told Honaker the meeting was rescheduled and "not to worry." [*Id.*] Kenniston did not tell her that Hocker's case was dismissed a day earlier because he failed to file schedules and other required papers. [*Hocker,* ECF No. 20.] He also never explained that he was suspended from the practice of law in this Court on December 21, 2017, so he could no longer represent Hocker in her bankruptcy case. [*See Ball II,* ECF No. 32.] These material omissions caused delays and increased Hocker's costs.

Kenniston also misled his clients when he promised to pay their filing fees with the money they provided. *See supra* Part II.B.3. The record shows that he failed to pay off Denny's case and completely disregarded his obligations to the Debtor in *In re Ball,* Case No. 16-60245 ("*Ball I"*) and *Ball II*. *See supra* Part I.A. The record contains clear and convincing evidence that Kenniston violated § 526(a)(3).

### 5. 11 U.S.C. §§ 527, 528: A Debt Relief Agency Must Provide Disclosures and Written Contracts to Assisted Persons.

Kenniston testified that he only provides his clients with the notice included in the bankruptcy petition, which does not include the notice and statement required by § 527(a) and (b) for a debt relief agency. [*Denny,* ECF No. 155, Exh. 1 at 25:2-26:2.] He also does not have retainer agreements for any of his clients. [*Denny,* ECF No. 155, Exh. 1 at 14:17-15:10.] Thus,

9

Kenniston has violated § 527(a) and (b) and § 528(a) in the course of his representation for all of these clients.

 C. **Kenniston Violated the Kentucky Rules of Professional Conduct.**

 1. **Kenniston Mishandled Client Funds in Violation of Rule 1.15.**

Kenniston's testimony shows that he cannot distinguish funds paid for legal fees or filing fees and thus he either intentionally failed to safeguard client property or did so with a willful disregard for his obligations. These actions violate the Kentucky Rules.

Kentucky Rule 1.15 provides: "Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client, third person, or both in the event of a claim by each to the property." KY SCR § 3.130 (1.15(a)). "Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of [five years] after termination of the representation." *Id.* The rule also provides that "a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." KY SCR § 3.130 (1.15(e)).

Kenniston admitted that he does not have an escrow account for legal fees received from his clients. [*Denny,* ECF No. 155, Exh. 1 at 5:10-24.] Kenniston said he "generally" will provide a hand written receipt to his clients, but he does not maintain a ledger or any other financial record system to manage client funds. [*Denny,* ECF No. 155, Exh. 1 at 10:18-11:24.] Therefore, he is in violation of Kentucky Rule 1.15(a) because he does not safeguard any clients' funds in a separate account and does not keep complete records. KY SCR § 3.130 (1.15(a)).

This Opinion already discussed how Kenniston repeatedly pocketed client funds intended to pay filing fees. *See supra* Part II.B.2. For example, the Denny Contempt Order determined:

"The record in this case confirms by clear and convincing evidence that Kenniston intentionally misappropriated the Payoff Funds for his own use without just cause and against client instructions."  The Denny Contempt Order also explains that Kenniston accepted $250.00 from Denny for the purpose of paying off her chapter 13 plan, but then never provided the service to earn that fee.  [Denny Contempt Order at 2-6.]

Kenniston admitted that he took fees from Worsham, but never filed a petition on her behalf.  [*Denny,* ECF No. 155, Exh. 1 at 20:13-21:2.]  Thus, he also violated Rule 1.15(e) by taking client funds before he earned the fee.

### 2.  Kenniston Violated his Duty of Candor to the Court.

Rule 3.3 prohibits attorneys from making any false statement of fact or law to the court.  KY SCR § 3.130 (3.3).  This Opinion already addressed multiple instances of false statements in documents filed for his clients.  *See supra* Part II.B.  The same evidence shows Kenniston violated the Kentucky Rule of Professional Conduct requiring attorneys to show candor to the court.

### 3.  Kenniston Failed to Competently Represent his Clients.

Rule 1.1 provides that all attorneys shall give their clients competent representation.  KY SCR § 3.130 (1.1).  Competent representation "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  *Id*.  Kenniston's failure to competently represent his clients was thoroughly documented in *Denny, Ball I* and *Ball II*.  [*See* Denny Contempt Order for copies of the relevant orders.]  The U.S. Trustee's evidence provides additional evidence of incompetent representation.

Kenniston admitted that he did not file the bankruptcy petition promised for Worsham.  [*Denny,* ECF No. 155, Exh. 1 at 20:13-21:2.]  Hocker's case was dismissed on December 18,

2017, because Kenniston failed to file Schedules and other necessary papers. [*Hocker,* ECF No. 20.] But Honaker testified that she provided Kenniston with all the documentation he requested on October 10, 2017. [*Denny,* ECF No. 155, Exh. 2 ¶ 2.] Kenniston did not request additional information and she thought the case file was complete. [*Denny,* ECF No. 155, Exh. 2 ¶ 13.]

The evidence also shows that Moore, Hays, Richardson and Robertson provided sufficient prepetition money to pay the filing fee, but each of these clients had their cases dismissed for failure to pay the filing fee. *See supra* Part II.B.3. Thus, Kenniston failed to give each of these cases the necessary "skills, thoroughness and preparation" required by the Kentucky Rules and his clients suffered substantial harm as a result. KY SCR § 3.130 (1.1).

### D. Authority to Sanction.

Bankruptcy courts have the inherent power to issue sanctions. *Grossman v. Wehrle* (*In re Royal Manor Mgmt., Inc.*), 652 F. Appx. 330, 342 (6th Cir. 2016), *cert denied sub nom. Grossman v. Wehrle*, 137 S. Ct. 831, 197 L. Ed. 2d 69 (2017), *reh'g denied*, 137 S. Ct. 1367, 197 L. Ed. 2d. 546 (2017); *Knowles Bldg. Co. v. Zinni (In re Zinni)*, 261 B.R. 196, 203 (B.A.P. 6th Cir. 2001). Federal courts expect lawyers to comply with state rules of conduct and may use their inherent authority to sanction violations. *See, e.g.,* LR 83.3(c). *See also Hornick v. Am. Commercial Barge Line*, Case No. 5:07CV-140R, 2008 WL 2168893 (W.D. Ky. May 23, 2008) (federal courts in Kentucky apply the rules adopted by the Kentucky Supreme Court governing professional conduct). Congress also explicitly vested bankruptcy courts with the power to enforce its rules and prevent an abuse of process. *See* 11 U.S.C. § 105(a).

In addition to these broad sanctioning powers, bankruptcy courts have explicit authority to sanction any debt relief agency that violates the provisions governing those agencies. The court may void any contract that does not comply with the material requirements of those

provisions. 11 U.S.C. § 526(c)(1). A debt relief agency is also liable for any fees an assisted person has received, as well as actual damages, reasonable attorney's fees and costs. 11 U.S.C. § 526(c)(2). If the court finds a "clear and consistent pattern or practice" of violating the provisions governing debt relief agencies, then it may impose an "appropriate civil penalty." 11 U.S.C. § 526(c)(5); *see also* 11 U.S.C. § 329(b) (a court may cancel agreements and order return of fees when the compensation exceeds the reasonable value of the attorney's services).

The evidence reveals a consistent pattern of disregard for the rules affecting debt relief agencies and violations of the Kentucky Rules of Professional Conduct. Kenniston made multiple substantive and procedural mistakes that caused real loss and he did not do what he promised. The fees Kenniston received far exceed the nominal value of any services Kenniston provided. This Court already took notice of Kenniston's recurring problems, and issued warnings and gradually increased sanctions to try to rectify these issues. But, the sanctions previously imposed are insufficient to remedy these failings and additional sanctions are required.

### III. CONCLUSION AND ORDER.

Based on the foregoing, it is ORDERED that the U.S. Trustee's Motion [*Denny,* ECF No. 137] is GRANTED. The following sanctions and civil penalties are imposed:

1. Kenniston shall disgorge the following fees to the chapter 13 Trustee, who shall use the funds to pay replacement counsel, with any remaining funds applied to monthly payments due and then returned to the affected party:

    a. $1,500.00 in Case No. 17-60892, *In re Richardson*;
    b. $800.00 in Case No. 17-51398, *In re Moore*;
    c. $1,000.00 in Case No. 17-51649, *In re Robertson*;
    d. $350.00 in Case No. 17-51818, *In re Hays*; and
    e. $960.00 in Case No. 17-52092, *In re Hocker*.

2. Kenniston is permanently disbarred from practice before the United States Bankruptcy Court for the Eastern District of Kentucky. Reciprocal sanctions are recommended in any other court in which Kenniston practices.

3. This Order is entered without prejudice to any client who wants to individually move this Court or any other available forum for relief and submit proof of his or her actual damages as a result of Kenniston's violations of the provisions governing debt relief agencies in §§ 526-528.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Tuesday, May 22, 2018
(grs)